1
2
3
4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7     ALEXANDER LEES,                    Case No.  19-cv-01603-HSG

8                     Plaintiff,         **ORDER GRANTING IN PART AND**
                                         **DENYING IN PART MOTION FOR**
9              v.                        **SUMMARY JUDGMENT; GRANTING**
                                         **MOTION TO SEAL; REFERRING**
10    J. MARISCAL, et al.,               **CASE TO SETTLEMENT; STAYING**
                                         **ACTION**
11                    Defendants.
                                         Re: Dkt. Nos. 57, 65
12

13

14          Plaintiff, a prisoner housed at Salinas Valley State Prison ("SVSP"), has filed this *pro se*

15   civil rights action under 42 U.S.C. § 1983 against SVSP officers Hogeland, Ponce, and Mariscal,

16   alleging that they used excessive force on him in violation of the Eighth Amendment and violated

17   his due process rights by falsely accusing him of assaulting staff members.  Dkt. Nos. 22, 26.

18   Now pending before the Court is Defendants' motion for summary judgment.  Dkt. No. 57.

19   Plaintiff has filed an opposition, Dkt. No. 60 and Defendants have filed a reply, Dkt. Nos. 64, 65.

20   Also pending before the Court is Defendants' motion to seal certain documents filed in support of

21   their reply.  Dkt. No. 65.  For the reasons set forth below, the Court GRANTS IN PART AND

22   DENIES IN PART Defendants' motion for summary judgment, Dkt. No. 57, and GRANTS

23   Defendants' motion to seal, Dkt. No. 65.

24                                 **BACKGROUND**

25          The following facts are undisputed unless otherwise noted.

26          Plaintiff is a California inmate serving a life sentence without the possibility of parole.

27   Dkt. No. 57-2 at 88-90.

28          On April 2, 2017, Plaintiff was housed at SVSP's Facility B, Building 5, and defendants

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1    Hogeland, Ponce, and Mariscal were posted at Facility B as yard officers.  Dkt. No. 22 at 6; Dkt.

2    No. 57-3 ("Hogeland Decl."), ¶ 1; Dkt. No. 57-5 ("Ponce Decl."), ¶ 1; Dkt. No. 57-4 ("Mariscal

3    Decl."), ¶ 1.  As yard officers, Defendants were required to respond to alarms.  Hogeland Decl., ¶

4    1; Ponce Decl., ¶ 1; Mariscal Decl., ¶ 1.  Plaintiff is medically classified as obese; is

5    claustrophobic; has degenerative disc disease; and was diagnosed with mild nerve compromise at

6    or near his left calf and ankle.  Dkt. No. 22 at 3, 11-13; Dkt. No. 60 at 6.

7            That day, Plaintiff was involved in a fight with inmate Gray in the dayroom of Facility B,

8    Building 5.  Dkt. No. 57-2 at 71-72.  Typical protocol after an inmate fight is to escort the inmates

9    involved to the gym, which is located about 100 yards from Facility B.  The medical office is

10   located about halfway between the gym and Facility B.  In the gym, the inmates are placed in

11   holding cells where they await evaluation by medical staff.  Medical staff go to the holding cell to

12   evaluate inmates for injuries and other medical concerns.  Hogeland Decl., ¶ 6; Ponce Decl., ¶ 6;

13   Mariscal Decl., ¶ 6.  The holding cells are about three to four feet in length and width, and have a

14   stool and desk for the inmate to use.  Hogeland Decl., ¶ 6; Ponce Decl., ¶ 6; Mariscal Decl., ¶ 5.

15   Inmates can stand in the cell but it is not possible to stretch.  Hogeland Decl., ¶ 6; Ponce Decl., ¶

16   6; Mariscal Decl., ¶ 5l; Dkt. No. 60 at 6.

17           The parties have differing accounts as to what happened next.

18           Plaintiff alleges the following.  After the fight, Plaintiff was lying on the floor, suffering

19   excruciating pain from back spasms and severe leg cramps.  Dkt. No. 22 at 4.  He was then

20   escorted from the building by defendant Marsical.  Defendant Hogeland was not present.  Dkt. No.

21   60 at 12.   Plaintiff was approximately thirty to forty yards from the B-Facility medical clinic

22   when his cramps and spasms caused him to fall to the floor.  Plaintiff was carried into the medical

23   clinic, but correctional officials accused him of faking his pain.  Defendants removed Plaintiff

24   from the medical clinic, put him into a wheelchair, and wheeled him out of the medical clinic to

25   the gym.  When Plaintiff arrived at the gym, he refused to get into the cell, stating that his pain

26   was too severe and that he was claustrophobic.  Dkt. No. 22 at 5.  Defendants grabbed Plaintiff out

27   of the wheelchair and, in a hate-filled racist rage, started beating and pummeling him.  Dkt. No. 22

28   at 5; Dkt. No. 60 at 7.  At some point, one of the defendants yelled, "Stop, you're elbowing me!"

1   Dkt. No. 60 at 18.

2       Defendants allege the following.  Both defendants Mariscal and Hogeland arrived at

3   Facility B in response to the alarm.  They cuffed Plaintiff's hands behind his back, and jointly

4   started escorting Plaintiff to the gym.  Hogeland Decl., ¶ 4; Mariscal Decl. ¶ 5.  Plaintiff left the

5   building without issue.  But, upon leaving the yard, Plaintiff began complaining about leg cramps

6   and back spasms.  Hogeland Decl., ¶ 4; Mariscal Decl. ¶ 4, Dkt. No. 60 at 6.  Defendants Mariscal

7   and Hogeland called over the radio to defendant Ponce, who was stationed near the medical office,

8   requesting a wheelchair.  Hogeland Decl., ¶ 4; Mariscal Decl. ¶ 4; Ponce Decl., ¶ 3.   Defendant

9   Ponce brought the wheelchair over and Plaintiff got in.  Hogeland Decl., ¶ 5; Mariscal Decl. ¶ 4;

10  Ponce Decl., ¶ 4.  Defendants wheeled Plaintiff to a holding cell and asked him to enter the cell.

11  Hogeland Decl., ¶ 7; Mariscal Decl. ¶ 6; Ponce Decl., ¶ 7.  Plaintiff stated that he had cramps, so

12  Defendants gave Plaintiff a couple minutes to sit in the wheelchair in the hopes that the cramps

13  would subside.  Hogeland Decl., ¶ 7; Mariscal Decl. ¶ 6; Ponce Decl., ¶ 7.  A couple minutes later,

14  Defendants again asked Plaintiff to stand and walk into the cell.  Plaintiff again stated that the

15  cramps had not subsided.  Plaintiff stood up on his own to enter the cell.  Defendants assisted

16  Plaintiff by providing stability to a standing position.  Plaintiff then became resistive.  He placed

17  his right foot onto the stool in the holding cell and pushed his body into defendant Marsical, who

18  was behind him.  Plaintiff was also swinging from left to right, as if to escape from Defendants'

19  grasp.  Hogeland Decl., ¶ 8; Mariscal Decl. ¶¶ 7-8; Ponce Decl., ¶ 8.  Defendants ordered Plaintiff

20  to stop resisting and get on the ground, but Plaintiff continued to resist.  Plaintiff struck defendant

21  Ponce in the rib area and defendant Ponce yelled that Plaintiff had elbowed him.  Plaintiff kicked

22  backwards with his left foot and struck defendant Marsical.  Hogeland Decl., ¶¶ 8-9; Mariscal

23  Decl. ¶¶ 7-8; Ponce Decl., ¶¶ 8-9.  Experience and training informed Defendants that the safest

24  place to subdue an inmate was on the ground.  Defendants therefore took Plaintiff to the ground.

25  Defendant Hogeland held Plaintiff's right arm and utilized leftward force; defendant Marsical

26  placed his hands around Plaintiff's upper back and provided force; and defendant Ponce placed his

27  right hand on Plaintiff's upper left arm area and his left hand on Plaintiff's left forearm area.

28  Defendants' actions, combined with Plaintiff's swinging momentum, pushed Plaintiff to the

United States District Court
Northern District of California

3

ground.  Defendant Hogeland then hit the radio alarm and defendant Marsical issued a Code 1 on the radio.  Once Plaintiff was on the ground, Defendants utilized their body weight to hold Plaintiff down until responding staff could arrive.  Defendant Hogeland used his weight to secure Plaintiff's right side and arm; defendant Marsical held Plaintiff down with his left hand on Plaintiff's back and his right arm on Plaintiff's right forearm; and defendant Ponce held onto Plaintiff's left side to maintain control of Plaintiff.  Defendant Ponce's right arm was pinned under Plaintiff's left arm and chest.  Hogeland Decl., ¶¶ 9-10; Mariscal Decl. ¶¶ 9-10; Ponce Decl., ¶¶ 9-11.

The subsequent events are undisputed unless otherwise noted.

Responding staff secured Plaintiff in waist restraints.  Afterwards, defendant Marsical sought medical treatment for his right wrist and defendant Ponce sought medical treatment for his right wrist and arm.  As a result of the injury that defendant Ponce received from the incident, he had to take four months off work and receive physical therapy.  Hogeland Decl., ¶ 10; Mariscal Decl. ¶ 10; Ponce Decl., ¶ 12.

On April 15, 2017, Plaintiff was issued a rules violation for battery on a non-prisoner with respect to the incident on April 2, 2017.  Dkt. No. 57-2 at 39-44.  That same day, Plaintiff also received other relevant documents, including a medical evaluation report, a mental health assessment report, and photographs related to the incident.  Dkt. No. 57-2 at 182.  Plaintiff alleges that the RVR is based on Defendants' false statements that he committed battery on defendants Marsical and Ponce.  Dkt. No. 22 at 6.  Through an investigative employee, Plaintiff was able to ask questions of staff member Garcia[1] and inmate Gray.  Dkt. No. 57-2 at 47, 55-56.  According to the record, on May 2, 2017, in response to questions posed by Plaintiff, Inmate Gray indicated the following.  On April 2, 2017, inmate Gray was placed in a B-Facility holding cage located in B-Facility Gym and had a direct line of sight. Inmate Gray never saw Plaintiff resist; elbow, kick, or jump kick any correctional officer; be argumentative or combative; or struggle, kick, or curse.

---

[1] Staff member Garcia's answers concern Plaintiff's behavior when he initially stopped in front of medical.  Staff member Garcia did not answer any questions about, and does not appear to have witnessed, the relevant incident in the gym.  Dkt. No. 57-2 at 55.

United States District Court
Northern District of California

1    Inmate Gray did hear a correctional officer yell, "Stop, you're elbowing me." Dkt. No. 57-2 at 55-

2    56.

3         On May 9, 2017, the disciplinary hearing was held for this RVR. At the hearing, Plaintiff

4    was able to ask questions and present evidence, including staff member Garcia and inmate Gray's

5    answers to his questions. Dkt. No. 57-2 at 49-50. The senior hearing officer and factfinder, R.

6    Downey, reviewed the applicable documents, including questions submitted by Plaintiff. Downey

7    found Plaintiff guilty of battery on a non-prisoner, stating that the charge was supported by

8    defendant Marsical's rules violation report, defendant Ponce's incident narrative, defendant

9    Hogeland's incident narrative, and the photographic evidence of injuries sustained by staff. Dkt.

10   No. 57-2 at 49-50; Dkt. No. 57-1 ("Downey Decl."), ¶ 2. As a result of the guilty finding, Plaintiff

11   was assessed a credit loss of 150 days, and lost the following privileges for 90 days: canteen,

12   phone, yard recreation, dayroom, package, and group privileges. Dkt. No. 57-2 at 50-51.

13                                            **DISCUSSION**

14        In the operative complaint, Plaintiff alleges that Defendants' use of force on April 2, 2017

15   constituted excessive force in violation of the Eighth Amendment because he was restrained and

16   not resisting, and that Defendants violated his due process rights when they falsely claimed that he

17   had assaulted peace officers during the April 2, 2017 incident. *See generally* Dkt. Nos. 22, 26.

18        Defendants argue that they are entitled to summary judgment because Plaintiff was

19   combative and resistive on April 2, 2017 and they used reasonable force to subdue him; because

20   false charges, without more, do not violate an inmate's due process rights; because a temporary

21   loss of privileges does not implicate a liberty interest; and because Plaintiff received all the

22   process that he was due. In the alternative, Defendants argue that they are entitled to qualified

23   immunity because they used force in good faith to subdue a combative inmate to maintain safety

24   and security; and because there is no evidence that Plaintiff was not afforded due process during

25   his rules violation hearing or that a false accusation violates an inmate's due process rights. *See*

26   *generally* Dkt. Nos. 57, 64.

27        In his opposition, Plaintiff states that his trial, conviction, and sentence were unfair; that he

28   has been exonerated; that he has no criminal history; and that the term "life without the possibility

of parole" is being used to bias the court.  Dkt. No. 60 at 5.  He further alleges that Defendants'

version of the events on April 2, 2017 is a deceptive lie and that Defendants beat him in a hate-

filled racist rage.  Dkt. No. 60 at 5-6.[2]

## I.      Motion to Seal

Defendants have filed a motion to seal Dkt. No. 65-3, which is an April 15, 2017,

confidential supplement to Plaintiff's Grievance No. SVSP-L-17-01800.  Defendants allege that

Dkt. No. 65-3 contains sensitive and confidential information that, if revealed to the public or

Plaintiff, would create a risk of safety to the prison, staff, or inmates by revealing the prison's

investigatory methods and findings, identifying sources, and creating a risk to the safety of those

who cooperated with the prison during its investigation.  Defendants request that the Court seal

Dkt No. 65-3 and review it *in camera* for its support of their reply brief.  Dkt. No. 65.

The Court has reviewed Dkt. No. 65-4 and considered the accompanying declaration of

SVSP Litigation Coordinator G. Lopez.  The Court finds that Defendants have demonstrated that

the confidential information in the documents, if disclosed, would create a risk to the safety of the

prison, staff, or inmates.  Good cause appearing, Defendants' motion to file Dkt. No. 65-3 under

seal is GRANTED.  *See, e.g., Ponte v. Real*, 471 U.S. 491, 499 (1985) (prison security is valid

reason to conduct in camera review of confidential prison documents).  Dkt. No. 65-3 shall remain

under seal until the conclusion of this case and any appellate proceedings.  If counsel for

Defendants does not request that the documents be returned following the conclusion of this case

and any appellate proceedings, the documents will be destroyed in conformance with the normal

---

[2] The legal claims in this action are whether Defendants used excessive force on April 2, 2017, in
B-Facility gym, and whether Defendants falsely accused Plaintiff of assaulting a peace officer
with respect to the events in the gym.  Outside of the allegations described above, Plaintiff's
opposition makes additional allegations that are unrelated to, or do not directly bear upon, the
legal claims raised in this action, such as Plaintiff is a patriot; Plaintiff was the target of various
prosecutors and police officers who expected him to be full of black rage, called him a snitch,
solicited persons to kidnap his children, and threatened his grandmother with death; subsequent to
these events, Plaintiff suffered retaliation following the false allegations; defendant Marsical has
sexually assaulted and harassed other inmates; defendant Marsical has a history of animosity
towards Plaintiff; and former defendant Singson is a rule-follower.  *See generally* Dkt. No. 60.
These allegations are not directly related to the events in the gym on April 2, 2017, or the
subsequent RVR.  These allegations therefore are not considered by the Court in deciding this
summary judgment motion.

United States District Court
Northern District of California

records destruction policy of the United States Courts.

## II.      Summary Judgment Standard

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a) (2014).  Material facts are those that may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Id.*  The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *See id.* at 324 (citing Fed. R. Civ. P. 56(e)).

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact.  *See T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The evidence must be viewed in the light most favorable to the nonmoving party, and inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party.  *See id.* at 631.  If the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

//

//

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.     Excessive Force Claim

####  A.     Legal Standard

The treatment a convicted prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.  *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (omission in original) (internal quotation marks and citation omitted).  Whenever prison officials stand accused of using excessive force in violation of the Eighth Amendment, the deliberate indifference standard generally applied to Eighth Amendment claims is inappropriate and the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.  *Hudson v. McMillian*, 503 U.S. 1, 6-7; *Whitley*, 475 U.S. at 320-21; *Jeffers v. Gomez*, 267 F.3d 895, 912-13 (9th Cir. 2001) (applying "malicious and sadistic" standard to claim that prison guards used excessive force when attempting to quell prison riot, but applying "deliberate indifference" standard to claim that guards failed to act on rumors of violence to prevent riot).  In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.  *Hudson*, 503 U.S. at 7; *see also Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979) (guards may use force only in proportion to need in each situation).

####  B.     Analysis

In the operative complaint, Plaintiff alleges that Defendants' use of force on April 2, 2017 constituted excessive force in violation of the Eighth Amendment because he was restrained and not resisting.  *See generally* Dkt. Nos. 22, 26.  Defendants argue that they are entitled to summary judgment on the excessive force claim because Plaintiff was combative and resistive and they used only reasonable force to subdue him.  *See generally* Dkt. Nos. 57, 64.  In his opposition, Plaintiff alleges that Defendants' version of events is a deceptive lie and supports his allegation with

inmate Gray's answers to the investigative employee's questions indicating that inmate Gray never saw Plaintiff resist; elbow, kick, or jump kick any correctional officer; be argumentative or combative; or struggle, kick, or curse. Dkt. No. 60 at 17-18. Defendants argue that inmate Gray's answers are not credible because of information contained in the April 15, 2017, confidential supplement to Plaintiff's Grievance No. SVSP-L-17-01800. The Court has reviewed *in camera* the April 15, 2017, confidential supplement. The information in this supplement contradicts inmate Gray's answers to the investigative employee, but this does not demonstrate the absence of a genuine issue of material fact. Rather, the fact that the April 15, 2017 confidential supplement contradicts inmate Gray's answers to the investigative employee indicates that there remains a triable issue of fact as to whether, as Plaintiff alleges and inmate Gray claims in his answers to the investigative employee, Plaintiff was restrained and non-resistant when Defendants used force on him, or, as Defendants allege, Plaintiff was combative and resistant and kicking Defendants, thereby making the force used by Defendants reasonable for the purpose of maintaining and restoring discipline. If Plaintiff was restrained and compliant, a reasonable jury could find that the use of force described by Defendants was malicious and sadistic, and not a good-faith effort to maintain or restore discipline. Whether Defendants' use of force violated the Eighth Amendment turns on whether the Court finds Plaintiff's version of events more credible or find Defendants' version of events more credible. Viewing the record in the light most favorable to the Plaintiff and refraining from making credibility determinations, the Court finds that there is a triable issue of material fact as to whether Defendants' use of force violated the Eighth Amendment. The Court DENIES summary judgment with respect to Plaintiff's excessive force claim.

**IV.    Due Process Claim**

Plaintiff alleges that Defendants violated his due process rights when they falsely claimed that he assaulted peace officers during the April 2, 2017, incident. *See generally* Dkt. Nos. 22, 26. Defendants argue that they are entitled to summary judgment because false charges, without more, do not violate an inmate's due process rights; because a liberty interest is not implicated by the temporary loss of privileges or by a life-without-parole inmate's loss of good-time credits; and because Plaintiff received all the process that he was due. *See generally* Dkt. Nos. 57, 64. The

1    only relevant argument in Plaintiff's opposition regarding his due process claim is that the

2    statement that he has been sentenced to life without parole is intended to bias the court because he

3    has been unfairly convicted and sentenced. *See* Dkt. No. 60. However, no court has overturned

4    Plaintiff's conviction or sentence. It is undisputed that Plaintiff is sentenced to a term of life

5    without the possibility of parole, regardless of whether Plaintiff believes his sentence to be

6    legitimate.

7          The Due Process Clause of the Fourteenth Amendment protects individuals against

8    governmental deprivations of "life, liberty or property," as those words have been interpreted and

9    given meaning over the life of our republic, without due process of law. *Board of Regents v. Roth*,

10   408 U.S. 564, 570-71 (1972); *Mullins v. Oregon*, 57 F.3d 789, 795 (9th Cir. 1995). Interests that

11   are procedurally protected by the Due Process Clause may arise from two sources – the Due

12   Process Clause itself and laws of the states. *See Meachum v. Fano*, 427 U.S. 215, 223-27 (1976).

13   In the prison context, these interests are generally ones pertaining to liberty. Changes in

14   conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due

15   Process Clause itself, whether or not they are authorized by state law. *See Sandin v. Conner*, 515

16   U.S. 472, 484 (1995) (citing *Vitek v. Jones*, 445 U.S. 480, 493 (1980) (transfer to mental hospital),

17   and *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (involuntary administration of

18   psychotropic drugs)). A state may not impose such changes without complying with minimum

19   requirements of procedural due process. *See id.* at 484.

20         Deprivations that are authorized by state law and are less severe or more closely related to

21   the expected terms of confinement may also amount to deprivations of a procedurally protected

22   liberty interest, provided that (1) state statutes or regulations narrowly restrict the power of prison

23   officials to impose the deprivation, i.e., give the inmate a kind of right to avoid it, and (2) the

24   liberty in question is one of "real substance." *Sandin*, 515 U.S. at 477-87. Generally, "real

25   substance" will be limited to freedom from (1) a restraint that imposes "atypical and significant

26   hardship on the inmate in relation to the ordinary incidents of prison life," *id*. at 484, or (2) state

27   action that "will inevitably affect the duration of [a] sentence," *id*. at 487.

28         A court presented with a procedural due process claim by a prisoner should first ask

10

1    whether the alleged deprivation is one so severe that it implicates the Due Process Clause itself or

2    one less severe that implicates an interest created by state statute or regulation.  If it implicates

3    neither, no procedural due process claim is stated.

4         The Ninth Circuit has not directly addressed in a published opinion whether being falsely

5    or wrongly accused of conduct violates an inmate's federal due process rights.  Other circuits,

6    however, have held that, generally speaking, allegations of a fabricated charge, without more, fail

7    to state a Section 1983 claim.  *See, e.g., Freeman v. Rideout*, 808 F.2d 949, 951, 953 (2d Cir.

8    1986); *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Hanrahan v. Lane*, 747 F.2d 1137,

9    1140–41 (7th Cir. 1984).

10        Plaintiff's false accusation allegation fails to state a cognizable due process claim because

11   the temporary loss of privileges does not amount to the atypical and significant hardship that

12   *Sandin* requires.  *See King v. Jauregui*, No. 218CV09649DOCGJS, 2019 WL 6312574, at *5

13   (C.D. Cal. Oct. 4, 2019), *report and recommendation adopted*, No. 2:18-CV-09649-DOC (GJS),

14   2019 WL 6310266 (C.D. Cal. Nov. 22, 2019) ("courts [in the Ninth Circuit] have declined to find

15   that [the] loss [of non-credits privileges, such as canteen, dayroom, yard, and telephone]

16   constitutes atypical and significant hardships in relation to the ordinary incidents of prison life

17   such that prisoner have constitutionally-protected liberty interests in these types of privileges")

18   (collecting cases).  Credit loss by an inmate serving a life term without the possibility of parole

19   also does not constitute an atypical and significant hardship within the meaning of *Sandin*.  *See*

20   *Gibbs v. Sanchez*, No. CV 16-9013-RGK (PLA), 2019 WL 3059579, at *6 (C.D. Cal. Apr. 26,

21   2019), *report and recommendation adopted*, No. CV 16-9013-RGK (PLA), 2019 WL 4266518

22   (C.D. Cal. June 21, 2019) ("when confronted with a due process claim arising from the loss of

23   good time credits asserted by a prisoner serving a life sentence, courts, following *Sandin*, routinely

24   find that the prisoner has no liberty interest in the loss of credits") (collecting cases).  Nor does

25   credit loss by an inmate serving a life term without the possibility of parole not affect the duration

26   of that inmate's sentence.

27        Even if Plaintiff had a liberty interest in being free from false accusation of a disciplinary

28   violation, the record indicates that, with respect to the alleged false accusation, Plaintiff received

United States District Court
Northern District of California

11

the minimum procedural protections required by the Supreme Court for prison disciplinary

proceedings as set forth in *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974), and *Superintendent v.*

*Hill*, 472 U.S. 445, 455 (1985).  The only procedural protections required in a prison disciplinary

proceeding are written notice, time to prepare for the hearing, a written statement of decision,

allowance of witnesses and documentary evidence when not unduly hazardous, aid to the accused

where the inmate is illiterate or the issues are complex, some evidence to support the decision, and

some indica of reliability as to the information forming the basis for prison disciplinary actions if

the information is received from a confidential informant.  *See Wolff*, 418 U.S. at 564-67; *Hill*, 472

U.S. at 454; *Cato v. Rushen*, 824 F.2d 703, 704-05 (9th Cir. 1987).  It is undisputed that Plaintiff

received these procedural protections.

As a matter of law, viewing the record in the light most favorable to Plaintiff, Plaintiff's

allegations fail to state a cognizable due process claim.  The Court GRANTS Defendants' motion

for summary judgment with respect to Plaintiff's due process claim.

## V.     Qualified Immunity

Qualified immunity is an entitlement, provided to government officials in the exercise of

their duties, not to stand trial or face the other burdens of litigation.  *Saucier v. Katz*, 533 U.S. 194,

200 (2001).  The doctrine of qualified immunity attempts to balance two important and sometimes

competing interests—"the need to hold public officials accountable when they exercise power

irresponsibly and the need to shield officials from harassment, distraction, and liability when they

perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal

quotation marks and citation omitted).  The doctrine thus intends to take into account the real-

world demands on officials in order to allow them to act "'swiftly and firmly'" in situations where

the rules governing their actions are often "'voluminous, ambiguous, and contradictory.'" *Mueller*

*v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009) (citing *Davis v. Scherer*, 468 U.S. 183, 196 (1984)).

"The purpose of this doctrine is to recognize that holding officials liable for reasonable mistakes

might unnecessarily paralyze their ability to make difficult decisions in challenging situations,

thus disrupting the effective performance of their public duties." *Id.*  To determine whether an

officer is entitled to qualified immunity, the Court must consider whether (1) the officer's conduct

United States District Court
Northern District of California

1    violated a constitutional right, and (2) that right was clearly established at the time of the incident.

2    *Pearson*, 555 U.S. at 232.  Courts are not required to address the two qualified immunity issues in

3    any particular order, and instead may "exercise their sound discretion in deciding which of the two

4    prongs of the qualified immunity analysis should be addressed first in light of the circumstances in

5    the particular case at hand."  *Id.* at 236.

6          With respect to Plaintiff's excessive force claim, as discussed above, making all reasonable

7    inferences in Plaintiff's favor as required at this stage, there is a triable issue of fact as to whether

8    a constitutional violation occurred.  It has long been established that prison officials violate the

9    Eighth Amendment when they use force maliciously and sadistically for the purpose of causing

10   harm.  *Whitley*, 475 U.S. at 320–21; *see also Drummond ex rel. Drummond v. City of Anaheim*,

11   343 F.3d 1052, 1061 (9th Cir. 2003) (denying qualified immunity because it is clearly established

12   that crushing an arrestee on ground despite his repeated cries for air and despite fact that his hands

13   were cuffed behind his back and he was offering no resistance constituted use of excessive force).

14   If Plaintiff's version of events is credited – that he was restrained and not resisting or combative –

15   a reasonable jury could find that Defendants' use of force on April 2, 2017 was malicious and

16   sadistic and therefore violated the Eighth Amendment.  Accordingly, Defendants are not entitled

17   to qualified immunity on their excessive force claim based on the record currently before the

18   Court.  Any such entitlement will depend on the resolution of disputed issues of fact. *See Tolan v.*

19   *Cotton*, 572 U.S. 660, 657 (2014) (in determining whether defendant is entitled to qualified

20   immunity, court must resolve factual disputes in favor of non-moving party).

21         With respect to the due process claim, because there was no violation of Plaintiff's due

22   process rights, there is no necessity for further inquiries concerning qualified immunity.  *See*

23   *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving

24   cases in which the defense of qualified immunity is raised is to determine first whether the

25   plaintiff has alleged the deprivation of a constitutional right at all.").

26                                **CONCLUSION**

27         For the reasons set forth above, the Court orders as follows.

28         1.     The Court GRANTS Defendants' motion to seal Dkt. No. 65-3.  Dkt. No. 65-3

                                      13

shall remain under seal until the conclusion of this case and any appellate proceedings.  If counsel for Defendants does not request that the documents be returned following the conclusion of this case and any appellate proceedings, the documents will be destroyed in conformance with the normal records destruction policy of the United States Courts.

2.     The Court GRANTS IN PART AND DENIES IN PART Defendants' motion for summary judgment.  The Court GRANTS Defendants' motion for summary judgment with respect to Plaintiff's due process claim.  The Court DENIES Defendants' motion for summary judgment with respect to Plaintiff's excessive force claim.

3.     The case is hereby REFERRED to Magistrate Judge Robert Illman for settlement proceedings pursuant to the Pro Se Prisoner Mediation Program to address the remaining Eighth Amendment excessive force claim: whether Defendants' use of force on April 2, 2017 when Plaintiff was in the gym violated the Eighth Amendment prohibition on excessive force.  Such proceedings shall take place within 120 days of the date this order is filed, or as soon thereafter as Magistrate Judge Illman's calendar will permit.  Magistrate Judge Illman shall coordinate a place, time and date for one or more settlement conferences with all interested parties and/or their representatives and, within fifteen days of the conclusion of all settlement proceedings, shall file with the Court a report thereon.  The Clerk is directed to serve Magistrate Judge Illman with a copy of this order and to notify Magistrate Judge Illman that a copy of the Court file can be retrieved from the Court's electronic filing database.

4.     In view of the referral, further proceedings in this case are hereby STAYED. The Clerk shall ADMINISTRATIVELY CLOSE this case until further order of the Court.  If the case is not settled, the Court will enter a new scheduling order for further proceedings.

This order terminates Dkt. Nos. 57, 65.

**IT IS SO ORDERED.**

Dated:   9/29/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California

14